IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **FRED ENGH**, <br><br> Plaintiff, <br><br> v. <br><br> **FIDELITY BROKERAGE SERVICES LLC** and **ELAN FINANCIAL SERVICES**, <br><br> Defendants. | Case No. 3:25-cv-673-SI <br><br> **ORDER** |

**Michael H. Simon, District Judge.**

Plaintiff Fred Engh, representing himself, brings this case against his broker Fidelity Brokerage Services LLC ("Fidelity") and former credit card issuer and servicer Elan Financial Services ("Elan"). Plaintiff alleges that Fidelity failed to provide him with the flexibility to perform financial maneuvers with his retirement funds and this inability to manage his funds resulted in a loss of $10,000. Fidelity then requested that Plaintiff sign a document waiving claims against Fidelity. When Plaintiff refused, Fidelity contacted Elan and had them cancel Plaintiff's credit card, causing Plaintiff emotional distress and embarrassment and reducing Plaintiff's credit score. Plaintiff filed an arbitration action through JAMS[1] against Elan, in which they failed to participate, and filed an arbitration action through FINRA[2] against both Elan and

---

[1] JAMS stands for Judicial Arbitration and Mediation Services, Inc.

[2] FINRA stands for Financial Industry Regulatory Authority.

PAGE 1 – ORDER

Fidelity, in which only Fidelity participated.[3] In this federal lawsuit, Plaintiff alleges several state law claims against Elan and Fidelity, invoking diversity jurisdiction.

Plaintiff moves for expedited injunctive relief, seeking an injunction to stop entry of the final arbitration award in the FINRA arbitration. Plaintiff contends that Fidelity did not participate in the arbitration in good faith, including by failing to produce discovery and intentionally misleading Plaintiff. Plaintiff moved in the arbitration to compel discovery. Plaintiff asserts that Fidelity argued in bad faith that Plaintiff's first motion was too soon and that his second motion was too late. He contends that the arbitrator denied his first motion based on Fidelity's promise to cooperate, but Fidelity did not cooperate and the arbitrator never held a status conference despite Plaintiff's many requests for one. When Plaintiff filed a second motion closer to the arbitration date, Fidelity argued that the motion was too late, and the arbitrator refused to postpone the hearing or grant Plaintiff any other relief. Plaintiff argues that without the discovery Fidelity refused to provide, he was denied due process and the chance fairly to present his claims in the arbitration. On April 14, 2025, the arbitrator requested that Fidelity prepare a final arbitration award. Plaintiff argues that without an expedited injunction enjoining Fidelity from preparing and otherwise participating in finalizing the arbitration award, a final arbitration award "imminently" will be entered, causing Plaintiff irreparable harm because it is difficult to overturn a final, binding arbitration award.

In deciding whether to grant a motion for temporary restraining order ("TRO"), courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking a preliminary injunction generally must show that: (1) the

---

[3] This arbitration is Case No. 24-02366.

PAGE 2 – ORDER

plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (rejecting the Ninth Circuit's earlier rule that the mere "possibility" of irreparable harm, as opposed to its likelihood, was sufficient, in some circumstances, to justify a preliminary injunction). A plaintiff also may succeed through the Ninth Circuit's alternative "serious questions" test. *See All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131-32 (9th Cir. 2011). Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. Thus, a preliminary injunction may be granted "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).

In addition, a TRO is necessarily of a shorter and more limited duration than a preliminary injunction.[4] Thus, the application of the relevant factors may differ, depending on whether the court is considering a TRO or a preliminary injunction. Finally, "[d]ue to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enters., LLC v. Florida Entmt. Mgmt., Inc*., 736 F.3d 1239, 1250 n.5 (9th Cir. 2013); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

Under Rule 65 of the Federal Rules of Civil Procedure:

---

[4] The duration of a TRO issued *without* notice may not exceed 14 days but may be extended by a court once for an additional 14 days for good cause, provided that the reasons for the extension are entered in the record. Fed. R. Civ. P. 65(b)(2).

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). There is a "very narrow band of cases" in which a TRO should be granted *ex parte*. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

Plaintiff filed this case on April 25, 2025, requesting *in forma pauperis* ("IFP") status. Plaintiff noted that on April 14, 2025, the arbitrator issued an order directing Fidelity to draft a final arbitration award. The Court grants Plaintiff's IFP application contemporaneous with this Order. Thus, Plaintiff will be sent the necessary documents to complete so that the U.S. Marshals may effectuate service on Fidelity. There is, however, time sensitivity to preserve the status quo before the final arbitration award is entered. Thus, the Court construes within Plaintiff's expedited motion for preliminary injunction a motion for TRO. Plaintiff faces irreparable harm if an *ex parte* TRO is not immediately entered. There is no harm to Fidelity in waiting a short time before a final arbitration award is entered, but there is significant harm to Plaintiff if an erroneous final arbitration award is entered, because federal court review of arbitration awards is narrow. "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the [Federal Arbitration Act]." *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019).

The Court also finds that there are serious questions regarding Plaintiff's underlying claims against Fidelity of tortious interference with contractual relations, breach of the implied duty of good faith and fair dealing, and Oregon's Unfair Trade Practices Act. The balance of the equities also tips sharply in Plaintiff's favor. When balancing the equities, "a court must identify

the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it." *Univ. of Haw. Pro. Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999). A court must then weigh "the hardships of each party against one another." *Id.* As noted, there is no harm to Fidelity in waiting a short period for a final arbitration award as compared to the significant harm faced by Plaintiff in the entry of a potentially erroneous arbitration award.

Finally, the public interest factor is neutral. "When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009) (simplified). Considering all the factors, they support the entry of a TRO for 14 days, until Fidelity is served and the Court can hold a hearing on the preliminary injunction.

The Court GRANTS Plaintiff's motion for TRO, construed as part of Plaintiff's motion for a preliminary injunction, ECF 5. Defendant Fidelity is ENJOINED from preparing a final arbitration award, submitting a final arbitration award to the arbitration panel, or otherwise participating in the FINRA arbitration, Case No. 24-02366, to allow a final arbitration award to be entered, for the next 14 days or until the Court orders otherwise. In the interest of justice, Plaintiff need not provide any security, and the Court waives all requirements under Rule 65(c) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

DATED this 5th day of May, 2025, at 1:50 p.m.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge